UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEE DAVIS H., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. C19-1765-BAT <br><br> **ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

Plaintiff appeals denial of his application for Supplemental Security Income, contending the ALJ erred by discounting his testimony, three lay witnesses' statements, and several medical opinions, and the Appeals Council erred by failing to consider a medical opinion submitted after the ALJ's decision. Dkt. 11. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is 33 years old, has a high school education, and has no past relevant work. Tr. 31. He alleges disability beginning August 3, 2015. Tr. 17. After conducting a hearing in August 2018, the ALJ issued a decision finding Plaintiff not disabled. Tr. 197-247, 17-34. The ALJ found Plaintiff had severe impairments of Ehlers-Danlos syndrome, poly arthralgias,

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 1

1  Asperger's syndrome, major depressive disorder, bipolar disorder, anxiety disorder, and
2  substance addiction disorder.  Tr. 20.  The ALJ found Plaintiff could perform sedentary work
3  with additional limitations, including only occasional work setting changes, occasional
4  interaction with supervisors, no team or cooperative work, and no members of the public present.
5  Tr. 22-23.

## DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole.  *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).

**A.      Medical Opinions**

An ALJ must provide "clear and convincing" reasons to discount a doctor's uncontradicted opinion and "specific and legitimate" reasons to discount a doctor's contradicted opinion.  *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).  Plaintiff contends the treating and examining doctors' opinions are uncontradicted because they are contradicted only by non-examining doctors' opinions. Dkt. 11 at 5.  Plaintiff's argument relies on a misreading of Ninth Circuit precedent stating "the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate *reason* for rejecting a treating or examining physician's opinion…."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (emphasis added).  In other words, contradictory opinions are a conflict the ALJ must resolve (and provide reasons for), not a reason to discount one opinion or the other.  Ninth Circuit precedent is clear that when contradicted by "another doctor's opinion," even a non-examining doctor's opinion, an ALJ need only provide "specific and legitimate" reasons.  *Trevizo*, 871 F.3d at 675, 676 (where treating physician's opinion was inferred to be inconsistent with non-examining physician's opinion,

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 2

1  "specific and legitimate" standard was applied).  The specific and legitimate standard applies
2  here.

3      **1.**       **Theodore J. Becker, Ph.D.**

4      In April 2018, Dr. Becker gave Plaintiff a Performance-Based Physical Capacity
5  Evaluation.  Tr. 3618-43.  Dr. Becker opined Plaintiff was "work intolerant" based on his
6  "significant physiological fatigue in work physiology," "aberrational clinical physiological
7  profile, and "biomechanical spine dysfunction."  Tr. 3633.  The ALJ discounted Dr. Becker's
8  opinions as vague, lacking specific functional limitations, and lacking explanation.  Tr. 28.  None
9  of these were specific and legitimate reasons supported by substantial evidence.

10      Dr. Becker's report explains the physiological abnormalities and spine dysfunction
11  preventing Plaintiff from standing or walking safely and thus making him work intolerant.
12  Plaintiff's blood pressure elevated dangerously when he walked for 41 seconds at a speed of half
13  a mile per hour.  Tr. 3631 (In "Distance Duration Test," Plaintiff's "elevated blood pressure"
14  when ambulating and slow recovery to resting rate showed he was "at risk for onset
15  cardiovascular incident, and that he should not be working.").  Plaintiff's observed inability to
16  safely walk slowly for less than a minute is not vague, non-specific, or unexplained.  Other
17  results also supported extreme limits on standing and walking.  After "minimal exertion,"
18  expected recovery to resting heart rate was expected within one minute, but Plaintiff's rate took
19  four minutes. Tr. 3632.  During a standing task where heart rate should increase by 8, his
20  increased by 40.  Tr. 3632.  Even during a seated task where heart rate should increase by four
21  beats per minute, Plaintiff's increased by 12.  Tr. 3632.  As for spine dysfunction, every
22  measurement of spinal range of motion was abnormal.  Tr. 3624-25.  The Court concludes the
23  ALJ erred by discounting Dr. Becker's opinions.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 3

**2.    Carolyn C. Houk, M.D.**

Plaintiff's treating physician, Dr. Houk, opined Plaintiff's "mobility is limited. He uses a wheelchair for long excursions and often a cane for shorter distances." Tr. 4555. Dr. Houk also referred to Dr. Becker's opinions, noting Plaintiff "recently had a performance-based physical capacity evaluation and was found to be work intolerant due to physiological fatigue, orthostatic hypotension and restricted spinal biomechanics." *Id*.

The ALJ discounted Dr. Houk's opinions as inconsistent with the medical evidence and Plaintiff's activities. Tr. 28. The only activity the ALJ cited was "spend[ing] all day playing computer games," which the ALJ found showed an "ability to persist." Tr. 28. Playing on a stationary computer is not inconsistent with Dr. Houk's opinion of limited mobility.

As for medical evidence, the ALJ cited three records. Tr. 28 (citing Tr. 3810, 4061, 1853). One shows "notably decreased strength, hypermobility of joints, and pain impairing [bilateral] hand use for critical daily activities," which support rather than undermine Dr. Houk's opinions. Tr. 1853. The other two are from emergency department visits for abdominal pain. Tr. 3810, 4061. The musculoskeletal and neurological examinations showed normal range of motion, sensory function, and motor function and strength. *Id*. These basic screening tests from an examination focused on acute abdominal pain do not undermine Dr. Houk's opinions, where more relevant clinical findings focused on Plaintiff's functional capacity show serious deficits. *See* Tr. 3622-32, 1853; *see Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) ("While ALJs obviously must rely on examples…, the data points they choose must *in fact* constitute examples of a broader development"). The ALJ's finding "medical records do not document objective findings showing that his conditions are as debilitating as Dr. Houk opined" is not supported by

1  substantial evidence.  Conflict with medical evidence was not a specific and legitimate reason to
2  discount her opinions.

3  The Court concludes the ALJ erred by discounting Dr. Houk's opinions.

4  **3.     Jane Distad, M.D.**

5  In May 2018, Dr. Distad filled out an Assessment of Physical Functioning.  Tr. 4319-22.
6  Asked if he needed to alternate between sitting, standing, and/or walking, she replied "No, but he
7  does best with slow positional transitions."  Tr. 4320.  Asked if he needed an assistive device,
8  she wrote he "uses a walker/wheelchair for all of his medical comorbidities."  *Id*.  Plaintiff
9  contends the ALJ failed to address these opined limitations.  The Commissioner argues these
10 opinions depended on standing and walking limitations the ALJ permissibly rejected.  The ALJ
11 rejected Dr. Distad's opinion Plaintiff could stand or walk only "seconds to minutes" in a day as
12 inconsistent with Plaintiff's activities, including a 2016 report of walking half a mile.  Tr. 29,
13 2141.  Plaintiff does not challenge this finding.

14 Stating Plaintiff "uses" a walker/wheelchair and "does best" with slow positional
15 transitions are not clearly opinions of functional limitation.  An ALJ need not consider a
16 recommendation in the absence of specific and identified functional limitations.  *See Rounds v.*
17 *Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005-06 (9th Cir. 2015); *see also Valentine v. Comm'r,*
18 *Soc. Sec. Admin.*, 574 F.3d 685, 691–92 (9th Cir. 2009) (ALJ is not required to credit or reject an
19 examining psychologist's recommendations for coping with symptoms when those
20 recommendations do not include opinions as to specific functional limitations).  The Court
21 concludes the ALJ did not err by failing to include limitations based on Dr. Distad's statements.

22 **4.     Rahul Khurana, M.D.**

23

1    In January 2016 Dr. Khurana examined Plaintiff and opined moderate difficulty with
2 simple instructions, marked to severe impairment in work-related judgment, moderately impaired
3 understanding, severe impairment in sustained concentration and persistence, severe impairment
4 interacting with the public, supervisors, or coworkers, and severe difficulty tolerating changes in
5 work routines.  Tr. 760.  He opined Plaintiff's impairments were "chronically disabling both
6 socially & occupationally."  *Id*.  The ALJ discounted Dr. Khurana's opinions as inconsistent with
7 his own examination findings and Plaintiff's activities.  Tr. 29.  Inconsistency with Dr.
8 Khurana's own findings was a specific and legitimate reason to discount his opinions.  For
9 example, he opined moderate difficulty with simple instructions despite observing Plaintiff
10 correctly perform a three-step task.  Tr. 759.  He opined severe impairment in concentration
11 despite observing Plaintiff perform normally in tasks designed to measure concentration.  *Id*.
12 And he opined marked judgment deficits despite observing "[j]udgment appears intact."  *Id*.
13 Plaintiff argues Dr. Khurana supported his opinions with his own observations, but fails to
14 identify any supporting observations.  Dkt. 11 at 12.  The Court concludes the ALJ did not err by
15 discounting Dr. Khurana's opinions.

16   **5.   David Mashburn, Ph.D.**

17   Dr. Mashburn examined Plaintiff in April 2017 and opined he was markedly limited in
18 maintaining punctual attendance, adapting to changes, communicating and performing
19 effectively, maintaining appropriate behavior, and completing a normal work day and work week
20 without interruptions from psychologically based symptoms.  Tr. 1379.  The ALJ discounted Dr.
21 Mashburn's opinions as inconsistent with his own observations and Plaintiff's activities.  Tr. 29.
22 The ALJ cited Dr. Mashburn's findings of intact memory and concentration, passively
23 cooperative behavior, and full orientation, but did not explain how they contradict any of Dr.

Mashburn's opinions. *Id*. The ALJ found the overall record showed "generally good social functioning," citing treatment records showing Plaintiff was "[p]leasant and cooperative" to his provider and had romantic relationships. Tr. 29, 726, 2141. Interactions with providers and romantic partners are sufficiently different from work interactions that these records do not undermine Dr. Mashburn's opinions, which were supported by his clinical observations of abnormal appearance, attitude, and behavior. Tr. 1380. The ALJ found Plaintiff could "maintain focus on a variety of tasks such as researching medical conditions, writing a blog, playing video games, and designing complex games." Tr. 29. There is no indication Plaintiff spent sustained time focusing on any of these activities except playing video games. *See* Tr. 2191, 2217-18, 2236. However, Plaintiff testified he was not able to play video games multiple hours a day for even two days in a row and only played multiple hours a few days per month. Tr. 212-13. Unlike work tasks, the games Plaintiff plays are "built to be easy," with no pressure, and can be stopped and started at will. Tr. 211. The ALJ found Plaintiff played video games "six to eight hours per day, with only occasional short breaks," but the citation the ALJ provided is a 2016 treatment note describing "overuse of computer" two years prior, which is before Plaintiff's alleged onset date. Tr. 1853. On this record, inconsistency with Plaintiff's activities was not a specific and legitimate reason to discount Dr. Mashburn's opinions. The Court concludes the ALJ erred by discounting them.

### 6. Tony Watson, LMHC

In July 2018 Plaintiff's mental health counselor, Mr. Watson, opined Plaintiff had marked limitations in several areas, would be off task more than 15% of the work day, would be at least 15% slower than the average employee, and would miss several days of work per month. Tr. 4347-50. The ALJ gave these opinions "no weight" because they were contradicted by

Plaintiff activities, including "managing an active social life, playing games for several hours per day, researching his symptoms and diagnoses, building video games, blogging, and being an activist." Tr. 29.  None of these activities required any particular pace or consistency, and the ALJ did not explain how they contradicted any of Mr. Watson's opinions.  The Court concludes the ALJ erred by discounting Mr. Watson's opinions.

**7.      Caregivers**

Plaintiff's caregivers Luisa Benson, CNA, in November 2016 and Jesse X. Menard in April 2018 described extreme limitations in walking without a cane, lifting more than a couple of pounds, using his hands, social functioning, and concentration.  Tr. 762-63, 3614-15.  The ALJ discounted these statements as inconsistent with treatment notes showing "intact physical functioning and mental status" and with Plaintiff's activities such as playing video games for several hours per day.  Tr. 30.  Plaintiff's ability to walk half a mile in September 2016 and his testimony of using his hands to play several hours of video games in a day were germane reasons to discount these statements.  Tr. 2141, 212.

Caregiver Aki Douthat in May 2018 described Plaintiff frequently falling and having problem holding utensils.  Tr. 591.  The ALJ discounted these statements as inconsistent with medical records showing "generally good balance" and playing video games, which required "upper extremity functioning."  Tr. 30.  Plaintiff's testified ability to play video games, sometimes several hours per day, was a germane reason to discount difficulty holding utensils.  Tr. 212.  The ALJ failed to provide any citation to support a finding of good balance, however, and the only citation in the ALJ's decision related to balance shows "mild imbalance" in Plaintiff's gait.  Tr. 4553.  On remand the ALJ should reconsider the statements about balance.

**8.      Sharmila Ahmed, M.D.**

In October 2018, one month after the ALJ's decision, Dr. Ahmed submitted a letter noting she had been treating Plaintiff since 2011 and opining it would be "very difficult for him to perform sedentary working with frequent repetitive movements for 8 hours and a 5-day workweek."  Tr. 13.  The Appeals Council found Dr. Ahmed's opinions did "not relate to the period at issue," despite Dr. Ahmed's statement she had treated Plaintiff since 2011 and her specific mention of worsening symptoms over "the last 6 months."  Tr. 2, 13.  The Commissioner contends Dr. Ahmed's opinions are "repetitive and cumulative of the opinions" the ALJ addressed, and therefore would not change the ALJ's analysis.  Dkt. 14 at 8-9.  Because the ALJ must reevaluate several medical opinions, the ALJ should also consider Dr. Ahmed's opinions.

**B.      Plaintiff's Testimony**

The ALJ discounted Plaintiff's testimony based on lack of supporting medical evidence, improvement with treatment, medication misuse, and conflict with his activities.  Tr. 24-27.  Lack of supporting medical evidence cannot, alone, constitute a sufficient reason to discount a claimant's testimony.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Improvement with treatment was also not a sufficient reason.  Impairments that can be "controlled effectively" by medication or treatment are not considered disabling for purposes of determining eligibility for Social Security benefits.  *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).  Treatment notes show medications improved Plaintiff's "functional activity level" from one to four or five out of ten.  Tr. 860, 724.  While this is some improvement, it does not indicate Plaintiff's symptoms improved to such a degree that he is now able to work, or that contradicts his testimony.

1   Medication misuse, however, was a clear and convincing reason to discount Plaintiff's
2   testimony. In January 2015 a provider declined to provide further medication "[d]ue to the
3   repeated instances involving sharing prescription medications, in spite of being asked not to do
4   so." Tr. 1980. In January 2016 a provider stated Plaintiff's "unusual use of morphine today, as
5   well as his request for benzodiazepines[,] is concerning to me for substance use disorder." Tr.
6   3744. In July 2016 a provider imposed a three-month "holiday" from pain medication because
7   Plaintiff had several "aberrancies" and "overused his medications." Tr. 3920. In January 2018
8   Plaintiff threatened to file a complaint against a provider for removing PTSD as a diagnosis,
9   because he needed the diagnosis to obtain benzodiazepines during certain medical procedures.
10  Tr. 2156. An ALJ may reject a claimant's testimony when there is evidence of drug-seeking
11  behavior suggesting the claimant exaggerated her symptoms to receive prescription pain
12  medication. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). Plaintiff argues it is
13  significant none of his providers diagnosed a substance use disorder. Dkt. 15 at 8. No such
14  diagnosis is required. The ALJ rationally interpreted the evidence as showing drug-seeking
15  behavior, which was a clear and convincing reason to discount Plaintiff's pain testimony.

16  Plaintiff's activities were another clear and convincing reason to discount his testimony.
17  Plaintiff alleges disability beginning August 2015. At the August 2018 hearing he testified he
18  could not "walk more than ten feet without balance problems," yet in September 2016 he
19  reported walking half a mile. Tr. 214, 2141. Plaintiff attends weekly water aerobics classes,
20  contradicting his testimony of agoraphobia and inability to get along with others. Tr. 1853.

21  The Court concludes the ALJ did not err by discounting Plaintiff's testimony.

22  **C.     Lay Witness Statements**

23

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 10

Plaintiff's father, mother, and sister provided statements describing Plaintiff's disabling pain, social dysfunction, and cognitive limitations. Tr. 534-41, 567, 588-89, 590, 3616-17. The ALJ discounted these statements for the same reasons he discounted Plaintiff's testimony, which were germane reasons to discount the lay witness statements. Tr. 31.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ shall evaluate Dr. Ahmed's opinions; reevaluate the opinions of Dr. Becker, Dr. Houk, Dr. Mashburn, and Mr. Watson; reconsider Plaintiff's caregiver's statements about Plaintiff's balance; develop the record and reassess the RFC as appropriate; and proceed to step five as needed.

DATED this 22nd day of June, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge